UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FORTUNATO K. FEBUS,
    *Plaintiff*,

v.

OFFICER ROBERT SOMODY *et al.*,
    *Defendants*.

No. 3:18-cv-00640 (JAM)

**INITIAL REVIEW ORDER**

Plaintiff Fortunato K. Febus was a prisoner in the custody of a correctional facility in New York when he filed this complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983. Febus alleges in principal part that police officers used excessive force on him, falsely arrested him, and were deliberately indifferent to his safety and medical care. For the reasons stated below, I will allow some of Febus's claims to proceed and for his complaint to be served on some of the named defendants.

**BACKGROUND**

The following allegations from Febus's complaint are assumed to be true solely for purposes of this initial ruling. On July 3, 2016, at approximately 10:20 p.m., plaintiff Fortunato Febus and his attorney were at the Crabshell Restaurant and Bar in Stamford, Connecticut. Doc. #1 at 2. Defendant Officer Robert Somody, who was wearing his police uniform, approached Febus and asked him whether he was Mr. Febus. *Ibid.* Febus acknowledged his identity, and Somody directed Febus to follow him. *Ibid.* Febus became confused. *Id.* at 2-3. Somody began to ask Febus questions, but Febus could not hear him due to the volume of the music playing in the restaurant. *Id.* at 3. Febus requested that Somody speak to his attorney who was purchasing food

1

in another part of the restaurant at the time. *Ibid.*

Somody then grabbed Febus by the shirt, pulled him to his feet and directed him to the front of the restaurant. *Ibid.* Febus noticed his attorney, pointed to him, and requested that Somody speak to him. *Ibid.*

Somody then grabbed Febus's arm and tried to twist it behind his back. *Ibid.* Febus pulled his arm away and asked why he was being subjected to "this kind of treatment." *Ibid.* Somody did not respond. Instead, he grabbed Febus's arm, twisted it behind his back again, and used his foot to sweep Febus off his feet and onto the ground. *Ibid.* Febus broke five of his ribs during his fall to the ground. *Ibid.* Somody fell on top of him, pinned him to the ground, and put him in a chokehold. *Ibid.*

Defendant Officer Joseph Rainone then arrived at the scene to assist Somody. *Id.* While Somody was choking Febus, Rainone grabbed Febus's arm, which was pinned under his body, and twisted it. *Ibid.* Febus complained that he could not breathe. *Ibid.* Rainone and Somody then re-positioned themselves and grabbed both of Febus's arms and pulled them over his head in a twisting motion. *Ibid.* In doing so, they tore both of his rotator cuffs. *Ibid.*

Seven police cars full of Stamford officers arrived at the scene, and the officers began to punch and kick Febus and bash his head into the ground to subdue him. *Id.* at 3-4. This use of force caused him to suffer a concussion; ear, neck, and back injuries; a hernia; difficulty breathing; and torn cartilage in his right knee. *Id.* at 4.

After being handcuffed, Febus was placed in a police car and transported to the Stamford Police Department. *Ibid.* Upon his arrival at the station, it became clear to police officials that Febus required immediate medical attention. *Ibid.* Officials arranged for an ambulance to

transport him to Stamford Hospital for treatment. *Ibid.*

At a hearing on July 5, 2016, a judge found probable cause to arrest Febus on charges of breach of peace in the second degree and interference with a police officer. *Ibid.* An officer from the Stamford Police Department attended the hearing but did not inform the judge that Febus was in the custody of the Stamford Police Department and confined at Stamford Hospital for treatment of his injuries. *Ibid.*

On July 6, 2016, an officer from the Stamford Police Department spoke to Febus's doctors to convince them that Febus needed to be returned to the police station. *Ibid.* The doctors indicated that his injuries precluded his release from the hospital. *Ibid.*

But then on July 7, 2016, Sergeant Doe spoke to Febus's doctors. *Ibid.* Sergeant Doe removed Febus from the hospital against the orders of the doctors and transported him back to the police station. *Ibid.* Febus's injuries prevented him from completing intake at the police station, and before he was finished being processed at the station, the officers had to return him to the hospital to receive medication to manage his pain. *Id.* at 4-5.

On July 8, 2016, Febus appeared in Connecticut Superior Court and was arraigned on charges of breach of peace and interfering with an officer. *Id.* at 5. Febus states that he pleaded guilty to the criminal offenses with which he had been charged, and a judge sentenced him to an unconditional discharge. *Ibid.*

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails

3

to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).[1]

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

Febus alleges that defendants violated his rights under the Fourth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution as well as under the Connecticut State Constitution. *See* Doc. #1 at 1. He seeks monetary damages for relief.

---

[1] Febus's claims against all officers in their official capacities are dismissed because the Eleventh Amendment bars claims for money damages against state officials in their official capacities. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). I will therefore limit my review to Febus's claims brought against officer defendants in their individual capacities. Moreover, I will limit my review for present purposes to federal law claims. That is because the core purpose of an initial review order under 28 U.S.C. § 1915A is to make an initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the court would decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. More generally, the court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment in the event that the Court has overlooked a controlling legal principle or if there are additional facts that would warrant dismissal of a claim.

*Excessive force*

Febus claims that he was subject to the use of excessive force. The Fourth Amendment to the U.S. Constitution (as applicable to the States through the Fourteenth Amendment) protects the right of the people to be free from unreasonable searches or seizures, and the Fourth Amendment is violated if the police use excessive force on a free person in the course of an arrest or other law enforcement action. *See Graham v. Connor*, 490 U.S. 386 (1989). When evaluating whether a particular use of force was unreasonable under the Fourth Amendment, courts consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. Whether law enforcement officers' use of force is "excessive" must be judged by "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (internal quotation marks omitted).

Febus alleges that Somody and Rainone used excessive force against him during his arrest when they, *inter alia*, tore both his rotator cuffs and broke five of his ribs. Febus has adequately alleged a claim of excessive force against Somody and Rainone. He alleges in essence that they severely assaulted him without provocation and for no valid law enforcement reason. I will therefore allow the Fourth Amendment excessive force claim to proceed against both Somody and Rainone in their individual capacities.

*False arrest*

Febus also alleges a Fourth Amendment claim for unlawful seizure or false arrest. I will dismiss this claim because Febus acknowledges that he entered a plea of guilty to two of the

5

charges against him, Doc. #1 at 6, and therefore he cannot show a favorable termination of all the charges for which he was arrested as is required to sustain a claim for false arrest. *See Miles v. City of Hartford*, 445 F. App'x 379, 383 (2d Cir. 2011); *Miller v. Stallworth*, 2018 WL 3974730, at *4 (D. Conn. 2018).

### *Deliberate indifference to safety and serious medical needs*

Febus claims that he was subject to police indifference to his serious medical needs following his assault by the police. The Due Process Clause of the Fourteenth Amendment protects the rights of pre-trial detainees against deliberate indifference to their safety or serious medical needs. A plaintiff must show: (1) that the conditions objectively "posed an unreasonable risk of serious damage to his health;" and (2) that the officer subjectively "acted intentionally to impose the alleged condition, or recklessly failed to act with the reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the officer knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell v. Pineiro*, 849 F.3d 17, 30, 35 (2d Cir. 2017); *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (denial of medical care violates due process rights of a pretrial detainee).

Febus alleges that Sergeant Doe removed him from Stamford Hospital against the advice of his hospital physicians and transported him back to the station. Febus was unable to complete the booking process due to the severity of his injuries, and officers transported him back to the hospital to receive treatment for pain. Febus has adequately alleged that Sergeant Doe was deliberately indifferent to his safety and medical needs by removing him from the hospital against the orders and advice of his treating physicians. I will therefore allow the Fourteenth Amendment due process claim for deliberate indifference to Febus's safety and serious medical

needs to proceed against Sergeant Doe in his individual capacity.

### *Right to counsel*

Febus claims that his constitutional right to counsel was violated when Somody ignored his request to speak to his lawyer who was present at the Crabshell Restaurant and Bar. The Sixth Amendment to the U.S. Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The right to counsel, however, is offense-specific and does not attach until a prosecution has commenced. *See McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). Because Febus does not allege that any prosecution had commenced against him at the time of his encounter with Somody, I will dismiss Febus's Sixth Amendment right to counsel claim.

### *Eighth Amendment*

Febus alleges that his rights were violated under the Eighth Amendment. But because Febus was not a convicted prisoner at the time of the events at issue, he has not plausibly alleged any claim under the Eighth Amendment for cruel and unusual punishment. *See, e.g.*, *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Darnell*, 849 F.3d at 29.

### *Timely arraignment*

Febus alleges that he was denied his right to a timely arraignment because an unnamed police officer "appeared before the Judge for the purpose of obtaining a Probable Cause finding [and] suppressed the fact that plaintiff was already in custody, and this prevented the Court from either demanding that plaintiff be transported to appear before the Court, or that the Judge be allowed to appear at Stamford Hospital so that plaintiff may receive a timely arraignment at his bedside." Doc. #1 at 7. Because Febus does not allege facts to show that any named defendant

7

was responsible for his lack of timely arraignment, I will not permit Febus's claim for denial of timely arraignment to proceed against any of the named defendants. *See Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation.").

### *Claims against the City of Stamford and Stamford Police Department*

Febus claims that the City of Stamford failed to "oversee" each defendant by failing to hire qualified officers and by failing to adequately train them. Doc. #1 at 6. He further alleges that Stamford created a policy and/or custom that allowed the constitutional deprivations against him to occur. *Ibid.*

It is well established that § 1983 does not impose *respondeat superior* liability against a municipality for the unconstitutional conduct of its employees. Instead, a municipality may be liable under § 1983 only if a constitutional violation occurred because of the act of a policymaking official or because of a municipal policy, practice, or custom. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Mitchell v. City of New York*, 841 F.3d 72, 80 (2d Cir. 2016). For pleading purposes, a policy or custom may not be inferred simply from the fact that individual police officers have engaged in wrongdoing, and a complaint may not rely solely on wholly conclusory allegations that the constitutional violation was the result of some municipal practice or policy. *See generally Adams v. City of New Haven*, 2015 WL 1566177 (D. Conn. 2015)

Febus alleges only in conclusory terms that the violations of his rights were the product of municipal policies involving the hiring of unqualified police officers and failure to train them.

Doc. #1 at 6. Because Febus does not allege facts to show the existence of any municipal practice, policy, or custom that caused police officers to violate his rights, I will dismiss his claim against the City of Stamford without prejudice. *See McCray v. Patrolman N.A. Caparco*, 2019 WL 409430, at *3 (2d Cir. 2019) (affirming dismissal of conclusory *Monell* failure-to-train claim); *Allen v. Antal*, 665 F. App'x 9, 14 (2d Cir. 2016) (affirming dismissal of conclusory *Monell* claim); *Adams*, 2015 WL 1566177 (dismissing conclusory *Monell* claim).

I will also dismiss all claims against the Stamford Police Department because a municipal police department is not an independent legal entity and is not subject to suit under section 1983. *See Rose v. City of Waterbury*, 2013 WL 1187049, at *9 (D. Conn. 2013).

## CONCLUSION

Plaintiff's excessive force claims may proceed against defendants Somody and Rainone in their individual capacities. Plaintiff's deliberate indifference claim may proceed against Sergeant Doe in his individual capacity. All remaining claims are DISMISSED pursuant to 28 U.S.C. §§ 1915A(b)(1) and (b)(2) but without prejudice to plaintiff's option to re-plead these claims by way of an amended complaint to be filed on or before **May 22, 2019**.

The Court enters the following orders:

(1) **The Clerk shall** verify the current work addresses of defendants Officer Robert Somody and Officer Joseph Rainone with the Stamford Office of Legal Affairs and mail a waiver of service of process request packet, containing the Complaint, Amended Complaint, and this Order, to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the Court on the status of those waiver requests on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service

9

by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) Plaintiff's individual-capacity claim against "Sergeant Doe" may proceed but plaintiff is advised that he must take steps to identify the real name of "Sergeant Doe" and then file an amended complaint that names him as a defendant. Failure to promptly do so may result in preclusion of any law suit against "Sergeant Doe" if the statute of limitations (which is 3 years for civil rights claims under 42 U.S.C. § 1983) elapses prior to filing an amended complaint.

(3) **The Clerk shall** send plaintiff a copy of this Order.

(4) **The Clerk shall** send a courtesy copy of the Complaint, Amended Complaint, and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the Court.

(7) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a

dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)     If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all case numbers in the notification of change of address. Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(10)    Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court. Plaintiff is advised that the Program may be used only to file documents with the Court. As local court rules provide that discovery requests are not filed with the Court, discovery requests must be served on defendants' counsel by regular mail.

**SO ORDERED** this 22d day of April 2019 at New Haven, Connecticut.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge